## MASCHAUR v. MASCHAUR.*

---

### DIVORCE; STATUTORY CONSTRUCTION.

1. The provision of § 966, D. C. Code, that "legal separation from bed and board may be granted for drunkenness, cruelty, and desertion," read in connection with the other sections of the Code relating to divorce, and their index or headlines, which plainly contemplate and provide for the two kinds of divorce known to the law before the adoption of the Code, namely, divorce *a vinculo* and divorce *a mensa et thoro*, has no application to voluntary deeds of separation, nor does it apply to divorce *a vinculo*, but means that a divorce *a mensa et thoro* may be granted for the causes mentioned; the prefixing of the adjective "legal" to the words "separation from bed and board" being only an inartificial mode of expressing the meaning of what would have been better expressed by the use of the word "divorce" instead of the term "legal separation."

2. That portion of § 966, D. C. Code, which provides that "legal separation from bed and board may be granted for drunkenness, cruelty, and desertion" is not too uncertain or indefinite to be given effect because it is not declared for what length of time drunkenness shall continue, or what degree of cruelty shall exist, or for what time actual desertion shall continue. These causes are well known to and defined in the divorce law of the country, and there can be no difficulty in arriving at the legal definition of the terms employed.

No. 1333. Submitted November 4, 1903. Decided January 13, 1904.

---

*Divorce.*—As to drunkenness as ground for divorce, see the presentation of authorities in editorial note to *Dennis* v. *Dennis*, 34 L. R. A. 449.

HEARING on an appeal by the complainant (specially allowed) from an order of the Supreme Court of the District of Columbia overruling a motion by the complainant that the cause be referred to an examiner to take testimony therein, the defendant having theretofore filed an answer to the petition denying the jurisdiction of the court to grant the relief prayed. *Reversed.*

The COURT in the opinion stated the case as follows:

This case is here on special appeal allowed from an order of the court below refusing to the petitioner the right to take testimony in support of the allegations of her petition, upon the ground that the court was without jurisdiction to hear and determine the case presented by the petitioner who seeks a divorce *a mensa et thoro* from her husband.

The petition is filed by a wife, the appellant, Amelia Maschaur, against her husband, the appellee, George W. Maschaur, for a divorce from bed and board of her husband, because of alleged cruelty of treatment by the husband. The husband answered the petition, and set up former adjudication of the cause alleged as to part of the time covered by the petition, and denied the allegation of cruel treatment as to the residue of the time embraced by the allegations of the petition; and he also denies that the court has jurisdiction to grant the relief prayed, because, as he alleges, there is no statute or law that gives the court jurisdiction in such case as that presented by the petitioner. And that appears to have been the opinion of the court below, and the application for an order to take testimony on behalf of the petitioner was accordingly refused; and from such refusal this appeal is taken.

The sole question, therefore, on this appeal is, whether the court below committed error in refusing to allow testimony to be taken, and that question depends upon the construction of the provisions of the Code for this District, in relation to the subject of divorce;—the former law upon the subject having been changed by the adoption of the Code.

*Messrs. Douglass & Douglass* for the appellant.

*Mr. Chapin Brown, Mr. John P. Earnest,* and *Mr. Charles H. Bauman* for the appellee:

1. The Code of the District of Columbia only authorizes the court to grant a divorce from the bond of marriage, and such a divorce can only be granted where one of the parties has committed adultery during the marriage. There is no other provision in the Code for granting a divorce (§ 966), except where the bill of complaint prays for a divorce from the bond of marriage, and in such case the court is given authority "to decree a *divorce* from bed and board if the causes prove to be sufficient," etc. (§ 968). The validity and effect of the provision contained in § 968 is commented on hereafter in this brief. The term "divorce" usually imports a dissolution of marriage (*Miller* v. *Miller,* 33 Cal. 353), and, while it is sometimes used in a general way as including also a partial separation of the marriage relation, such as a decree of separation, a decree *a mensa et thoro,* or a judicial separation, yet, unless the word "divorce" is qualified, it is understood as importing a dissolution of the marriage. It is clear from the wording of § 966 that the legislature did not intend, under the provisions contained in that section, to grant jurisdiction to the court to decree a *divorce* from bed and board. By using the word "divorce" in one part of the section last referred to, and in another part of the same section the words "legal separation," it is plain that the legislature intended to make a distinction between the two kinds of relief to be granted to the parties litigant. The language used in § 966 cannot in any way be changed by the heading of that section, for the reason that the language of the section is unambiguous and susceptible of but one construction. *State* v. *Popp,* 45 Md. 432. Section 966 is headed "causes for divorce *a vinculo,* and for divorce *a mensa et thoro,"* and yet under this same heading provisions for declaring marriage contracts void are made, as well as for the legal separation and for divorce. The headings of sections to the Code are no more a part of the Code than the

marginal notes to any legislative enactments. If we review briefly the history of the enactments of the Code of the District of Columbia, it is easily understood how the particular heading of § 966 was made. It will be remembered under the Revised Statutes of the United States relating to the District of Columbia there were provisions for two kinds of divorces, namely: A *divorce* from the bond of marriage (§ 738, Rev. Stat. D. C.), and a *divorce* from bed and board (§ 739, Rev. Stat. D. C.). These sections *were* (originally) almost literally incorporated in the Code of the District of Columbia as it passed the House and Senate, and after it had passed these two bodies of Congress a vote to reconsider in the hurry of the last hours of the Congress was moved and adopted in the Senate, and the provisions in the Code allowing a *divorce* from bed and board were stricken out, and § 966 of the Code was adopted in lieu thereof, but leaving the heading to that section without amendment. As the Code was originally introduced and adopted by Congress that heading was appropriate, but after the amendment had been adopted it was entirely inappropriate to that section. Congressional Record, vol. 34, part 4, 56th Cong. Sess. pp. 3496, 3497. It is claimed by counsel for the appellant that the language of § 970 of the Code, where the words "and divorce from bed and board" are used, "presupposes that provision had already been made for divorce *a mensa et thoro,* and fixes the purpose of Congress in amending § 966," but such is not the inference to be drawn from such words, but it is either a fair inference that the words used in § 970 refer, or originally referred, to the same words, namely: "Divorce from bed and board" used in § 968, where such a decree is authorized, or was originally authorized, in a bill or proceeding in which an absolute divorce or divorce from the bond of marriage is prayed; or the language used in § 970, namely, the words "divorce *a mensa et thoro,*" could with all propriety refer to any divorce *a mensa et thoro* granted prior to the adoption of the Code, when the law authorized a divorce *a mensa et thoro.*

2. But it is submitted that the provision of § 966, contained in the second *proviso,* if it were intended thereby to *confer* upon

the supreme court of the District of Columbia *authority* to grant a *divorce* from bed and board, is void for uncertainty in its terms, and certainly the court could not give the language used in the second proviso of § 966 effect without additional legislation. The *degree* or the *extent* of neither the term "drunkenness," nor "cruelty," nor "divorce," on which a legal separation could be granted, is set forth in that section, or any part of the Code. If it were intended to be an enactment of a new power conferred upon the court, it would be necessary, it would seem, to define the meaning of the term and the extent or degree of "drunkenness," "cruelty," or "desertion." This is not done, and it is respectfully submitted that it was the intention of Congress, by said second proviso, only to reserve to the supreme court of the District of Columbia the power and jurisdiction which it had previously,—and prior to the year 1860, before any divorce laws existed in the District of Columbia,—to grant "legal separation" between husband and wife. "Before the passage of the act of Congress of the 19th of June, 1860 (see 12 Stat. at L. p. 50), no court in this District possessed jurisdiction over the subject of divorce. At common law neither a court of law nor a court of equity have power to grant a divorce (see Willard, Eq. Jur. p. 655)." *Hatfield* v. *Hatfield,* 6 D. C. 81. But while prior to the year 1860 no court had jurisdiction to grant a *divorce,* yet, as was decided in the case of *Cheever* v. *Wilson,* 6 D. C. 154, "in a proper case the court had power to decree a *separation.*" It must be recognized that there is a strong sentiment against any legislation conferring power and jurisdiction on courts to grant divorces for any ground except adultery, and certainly this sentiment was sufficiently potent to prevent Congress from passing such a law, under the conditions surrounding the enactment of the Code of law of this District.

It is therefore respectfully submitted that it was not intended by the second proviso in § 966, Code, now under discussion, to confer upon the supreme court of the District of Columbia any further additional power than it had prior to the year 1860 and thereafter, but it was intended by said second proviso only to reserve to the court that power which it before had, and not to ex-

clude or take away that power by the principal enacting clause of said § 966. "The office of a proviso generally," said Mr. Justice Story, in *Minis* v. *United States,* 40 U. S., 14 Pet. 423, 445, 10 L. ed. 791, 799, "is either to exclude or except something from the enacting clause, or to qualify or restrain its generalities, or to exclude some possible ground of misinterpretation of it, as extending to clauses not intended by the legislature to be brought within its purview." Cited with approval in *Austin* v. *United States,* 155 U. S. 417, 431, 39 L. ed. 206, 312.

The bill or petition in this case does not pray for an absolute divorce, so that no relief could be granted to the petitioner under § 968 of the Code, and the effect and authority of that section are not, therefore, under discussion. If they were, it would be contended that that section (968) is absolutely void and incapable .of execution, and the language of this last-mentioned section may be touched upon more at length in the oral argument of this cause.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

There are several provisions of the Code relating to divorces, both *a vinculo matrimonii* and *a mensa et thoro.*

By § 85, declaring the jurisdiction of the court of equity, it is provided that "the equity court shall have jurisdiction of all causes heretofore cognizable in equity, and of all petitions for divorce, except" etc. But the more particular provisions upon the subject are contained in the following sections of the Code:—

"Sec. 966. Causes for divorce *a vinculo* and for divorce *a mensa et thoro.*—A divorce from the bond of marriage may be granted only where one of the parties has committed adultery during the marriage: *Provided,* That in such case the innocent party only may remarry, but nothing herein contained shall prevent the remarriage of the divorced parties to each other: *And Provided,* That legal separation from bed and board may be granted for drunkenness, cruelty, or desertion: *And Provided,* That marriage contracts may be declared void in the following cases:" and then follow the enumeration of cases in which marriage contracts may be declared void.

"Sec. 968. In suits for divorce *a vinculo* divorce *a mensa et thoro* may be decreed.—Where a divorce from the bond of marriage is prayed for the court shall have authority to decree a divorce from bed and board if the causes proved be sufficient to entitle the party to such relief only.

"Sec. 969. Revocation of divorce *a mensa et thoro.*—In all cases where a divorce from bed and board is decreed, it may at any time thereafter be revoked by the court upon the joint application of the parties to be discharged from the operation of the decree.

"Sec. 970. Causes arising after divorce *a mensa et thoro.*— Where a divorce from bed and board has been decreed the court may afterwards decree an absolute divorce between the parties for any cause arising since the first decree and sufficient to entitle the complaining party to such decree."

These sections are all arranged under the title *Divorce,* and they plainly contemplate and provide for the two kinds of divorce that were known to the law before the adoption of the Code, that is, divorce *a vinculo* and divorce *a mensa et thoro.*

But it is contended that there is such ambiguity and uncertainty introduced into § 966 by the employment of the terms *legal separation* from bed and board, that it is impossible to determine to what kind of divorce or separation those terms refer, —whether to divorce *a mensa et thoro,* or to some other kind of separation. It is argued here, and the opinion has been expressed by the court below, that "the expression 'legal separation' was unknown to our law before it found its place in the Code; and, in the absence of some definition in the statute, is of a very uncertain significance; for separation by decree *a mensa et thoro,* or by voluntary separation of the parties, executed in legal form, may be equally comprehended by the phrase 'legal separation,' as would be the result of a divorce *a vinculo matrimonii."* And further, it is said that "there can be no decree for divorce in the absence of an amendment of the law which shall state distinctly (according to what may be the wish of Congress) whether the courts are to be empowered to decree on these cases at all, and if so, whether they are to grant the divorce according to the provisions of the old law, or according to those of the Code."

It may well be conceded that the provisions contained in §
966 are not, in all respects, very happily expressed, and the
phraseology employed is not the most appropriate that could
have been selected.   But we think there is no real difficulty in
arriving at the intention of the legislature, from the language
employed.   We cannot suppose for a moment that the terms "le-
gal separation from bed and board," as employed in the Code,
can have any application to voluntary deeds of separation, for in
respect to them the courts are not required to make decrees to
give them legal effect; and it is equally plain, we think, that those
terms do not apply to or describe the divorce *a vinculo matri-
monii,* as that divorce is final and does more than separate from
bed and board.   The term, "legal separation from bed and
board," expresses substantially the same meaning as the term,
divorce *a mensa et thoro.*   The prefixing the adjective *legal* to
the words, "separation from bed and board" is only an inartificial
mode of expressing the meaning of what would have been better
expressed by the use of the word "divorce" instead of the term
"legal separation."   But reading the several sections of the
Code, to which we have referred, in the light of and by the aid
furnished by the index or headlines of these sections, we think
no doubt can exist as to the real meaning of the authors of the
Code; and that "legal separation from bed and board" is a syn-
onymous term with divorce *a mensa et thoro.*

The meaning of the word "divorce" is separation; and, as de-
fined by the best text writers upon the subject, "a divorce is a
lawful separation of husband and wife, made before a competent
judge on due cognizance had of the cause, and sufficient proof
made thereof."   And according to another definition, "it is a
sentence pronounced by an ecclesiastical judge, whereby a man
and woman formerly married to each other are separated and
parted, according to law."   Godolphin, Abr. 493; Shelford,
Marr. & Div. 363.

The separation from bed and board is only a partial divorce,
and does not dissolve the bond of marriage.   Such divorce, by
judicial decree, gives legal effect to actual separation of husband
and wife; but retains power and jurisdiction over the parties and

the matter of separation. The distinction between divorce from bed and board, and from the bond of marriage, is not mentioned in Scripture, and was unknown to the ancient church. It was devised by the Canonists and schoolmen to avoid the dissolution of the sacred bond of marriage, and was first established by the decrees of the Council of Trent in 1563. Shelford, Marr. & Div. 365. The writers of the highest authority speak of this partial divorce as judicial separation. Chancellor Kent, in his Commentaries, Vol. 2, p. 125, says: "The court may decree a separation from bed and board forever, or for a limited time, in its discretion, and the decree may be revoked at any time by the same court by which it was pronounced," etc. And again, in speaking of this partial divorce, the author says [p. 128] : "And on these separations from bed and board, the courts intrusted with the jurisdiction of the subject will make suitable provision for the support of the wife and children out of the husband's estate, and enforce the decree by sequestration." That is, beyond doubt, the kind of divorce contemplated by the section of the Code, and which the terms "legal separation from bed and board" are used to describe.

But it is argued that because there is no limitation of time affixed to these causes for which this partial divorce or separation may be decreed, therefore the provision of the Code in relation to it is too indefinite and uncertain to be carried into operation, and that there is no power in the courts to grant such divorce for separation from bed and board, until there shall have been an amendment by act of Congress procured, defining with greater certainty the causes for which such partial divorces may be granted. But we fail to perceive the force of this objection. There are three causes mentioned by the Code for which such partial divorces may be granted, that is to say, drunkenness, cruelty, and desertion. The statute does not declare for what length of time drunkenness shall continue, or what degree of cruelty shall exist, or for what time actual desertion shall continue; but these causes are all well known to and defined in the divorce law of the country, and there can be no difficulty in arriving at the legal definition of the terms employed. In some of the

States where these causes are made grounds for divorce, there is no limitation of time prescribed for the continuance of drunkenness, or desertion, any more than for cruelty. This is so in New York, North Carolina, and other States. The meaning of the terms employed is left to the settled construction placed upon them by the courts, in the administration of the divorce law of the country. In many of the States, as was the case in this District prior to the adoption of the Code, periods of limitation are prescribed for the continuance of desertion and also of drunkenness, before the right to relief accrues. But the law in that respect has been changed in this District by the adoption of the Code.

We think there was error committed by the court below in holding that there was no jurisdiction to entertain the petition for divorce *a mensa et thoro,* and in refusing the order to allow the taking of testimony in support of the allegations of the petition filed by the appellant. We must, therefore, reverse the order appealed from and remand the cause, that further proceedings may be had not inconsistent with the foregoing opinion.

Order *reversed and cause remanded for further proceedings.*